Jack TILLERY, Plaintiff–Appellant,

v.

HULL & COMPANY, INC., La Reunion Francaise, et al., Defendants–Appellees.

No. 88–3706.

United States Court of Appeals,
Eleventh Circuit.

July 12, 1989.

■

Nathaniel G.W. Pieper, Tampa, Fla., for plaintiff-appellant.

Christopher R. Fertig, Ft. Lauderdale, Fla., William F. McGowan, Jr., Tampa, Fla., for defendants-appellees.

Before VANCE and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

This is an appeal from a non-jury trial in an action to recover the full value of a marine insurance policy. For the reasons set forth below, the district court's rulings must be affirmed.

## A.

*Facts and Background Information.*

The relevant facts are not in dispute. The appellant entered into a marine insurance contract with the appellee insurance company. The contract pertained to the appellant's vessel, the Texas Pride, and its face value was for $150,000.00. The contract included several standard provisions. First, its "barratry clause" provided coverage for losses caused by acts of barratry.[1] Second, the contract provided that losses caused by capture and seizure were excluded from coverage (the "Free of Capture and Seizure clause" or "FCS clause"). Finally, the contract provided coverage for a "constructive total loss" of the vessel. According to the contract, a "constructive total loss" is said to have occurred when the expense of recovery and repair of the

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation

1. The term "barratry" describes: (1) an act committed by the master or crew involving deliberate disobedience of a master's orders, (2) an act committed by master or crew for some unlawful purpose, contrary to their duty to the owner, thereby causing injury to the latter, or (3) a violation arising from gross negligence. *United States Fire Ins. Co. v. Cavanaugh,* 732 F.2d 832, 835 (11th Cir.1984).

vessel exceeds its agreed-upon valuation (here, $150,000.00).

In March, 1983, the appellant entered into another contract whereby Captain Paul Miller agreed to fish the Texas Pride off the coast of Florida. The contract proscribed fishing in excess of 200 miles from the shore, and it prohibited the carrying of illegal substances. Shortly after the agreement was struck, however, Captain Miller took the boat to Jamaica for the purpose of picking up a shipment of marijuana. The boat was seized by Jamaican authorities in April, 1983, and stripped of its gear and equipment. Prior to this seizure, however, there had been no physical damage to the boat.

Forfeiture proceedings commenced in Jamaica shortly thereafter. Appellant's son, Rip Tillery, attended these proceedings. An order of forfeiture was entered in May, 1983, and the boat became property of the Jamaican government. The appellee then cancelled appellant's policy.

In February, 1984, the insurance company paid $30,000.00 for the release of the vessel. Rip Tillery and an employee of the appellee flew to Jamaica to assess the damage to the vessel. Their survey, as memorialized in a signed field survey, revealed that the damages totalled $6,350.00.

The appellant subsequently sued to recover the full face value of the policy. The district court found in favor of the appellee. Specifically, the court held that the damages to the vessel were proximately caused not by Captain Miller's barratry, but, rather, by the stripping subsequent to the seizure. Because damages sustained incident to capture were excluded from coverage under the FCS clause, the court concluded that the appellant could recover only the relatively minor sum sustained as a result of the barratry. The court also held that no constructive total loss had occurred. This appeal followed.

### B.

#### Discussion.

1. Scope of Coverage of the Marine Insurance Policy.

■ The primary issue on appeal is whether the damages sustained by the Tex-

as Pride are covered by the insurance policy. The appellant argues that Captain Miller's barratry was the cause of the Texas Pride's damages. The appellee, however, argues that the damages were caused by the seizure and stripping of the boat by the Jamaican authorities. This court must, therefore, determine whether the Texas Pride's damages were caused by a covered risk (namely, barratry) or an excluded risk (namely, seizure).

Courts analyzing problems of marine insurance causation have, as a rule, applied strictly the doctrine of *causa proxima non remota spectatur* ("the immediate not the remote cause is considered"). That is to say, courts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient causes than to the temporally remote causes. *See, e.g., Lanasa Fruit Steamship & Importing Co. v. Universal Insurance Co.,* 302 U.S. 556, 563, 58 S.Ct. 371, 374, 82 L.Ed. 422 (1938) (noting, in admiralty case, that "cause which is truly proximate is that which is proximate in efficiency"); *Blaine Richards & Co. v. Marine Indemnity Insurance Co.,* 635 F.2d 1051, 1054 (2d Cir.1980) (to "trace the origins of losses back to their remote causes" would violate the parties' reasonable understandings as to the scope of coverage).

Based on this general principle, the courts have uniformly denied recovery where the ultimate cause of a vessel's damage was excluded from coverage. In the leading English case of *Cory v. Burr,* 8 App.Cas. 393 (1883), for example, a captain committed barratry by attempting to pick up and smuggle a consignment of tobacco. The vessel was captured by Spanish authorities. The vessel was damaged incident to its capture, and the insurance contract contained standard barratry and FCS clauses. Speaking for the House of Lords, Lord Blackburn stated that recovery could not be had based on the remote cause of barratry:

> If it had not been that the Spanish revenue officers doing their duty ... had

come and seized the ship, the barratry of the captain in coasting along there ... would have done the assured no harm at all. The underwriters do undertake to indemnify against barratry; they do not undertake to indemnify against any loss which is directly sustained in consequence of the barratry.

*Id.* at 400–01.

The reasoning of *Cory* has produced identical results in American jurisdictions. In *Ope Shipping, Ltd. v. Allstate Ins. Co.,* 687 F.2d 639 (2d Cir.1982), the plaintiff's ships were taken over by ships' captains and crews. The vessels were damaged incident to these barratrous acts. The Second Circuit upheld the district court's conclusion that these damages had been "caused" not by the barratry but by the seizure, a circumstance excluded from coverage by the FCS clause. *Accord Republic of China v. National Union Fire Insurance Co.,* 151 F.Supp. 211, 231 (D.Md. 1957), *aff'd,* 254 F.2d 177 (4th Cir.1958) ("[W]here the ultimate cause of the loss is excluded from coverage by a warranty or an exclusion clause, recovery may not be had on the grounds of barratry").

This court now follows the sound rule set forth by *Cory* and the Second and Fourth Circuits. The decision to do so yields a straightforward result in the present case. The Texas Pride, like the vessels in *Cory* and *Ope,* was not damaged by the barratry of its master; it was damaged only after it was seized by the Jamaican authorities. Such contingencies are specifically excluded from coverage by the FCS clause. Accordingly, Captain Miller's barratry was not the efficient cause of the damage and we must affirm the district court's ruling on this point.

This court's holding in *Cavanaugh* does not require a different result. In *Cavanaugh,* the captain committed a barratrous act. The vessel, consequently, ran aground and burned. The insurance contract specifically insured against damages flowing from barratry, grounding, and/or burning. Because the insurance contract specifically provided coverage for the risks which caused the damage, recovery was permit-

ted. In the present case, however, the ultimate cause of the Texas Pride's damage flowed not from a covered risk but from an *excluded* risk, namely, capture and seizure. Accordingly, *Cavanaugh's* holding does not control the present case, and the appellant's argument must be rejected.

2. Remaining Arguments.

The appellant raises two other objections on appeal. First, the appellant argues that the district court erred by not finding a constructive total loss. Second, the appellant argues that the district court's damage award was clearly erroneous. Neither argument has any merit.

■ The district court correctly found that the damage to the Texas Pride did not occasion a constructive total loss. As noted earlier, the plain terms of the insurance contract provide that such a loss occurs only when the costs of repair exceed the value of the vessel. The district court found that this contingency did not occur, and the court's finding on this point is amply supported by the record. Accordingly, the district court's ruling on this point must be affirmed.

■ For similar reasons, the district court's damage award cannot be deemed clearly erroneous. *See Taylor Rental Corp. v. J.I. Case Co.,* 749 F.2d 1526, 1530 (11th Cir.1985) (appellate court reviews district court's damage award under "clearly erroneous" standard). The court examined the list of expenses to which the appellant deemed himself entitled, and it awarded what it found to have been proximately caused by Captain Miller's barratry. This figure totalled $8,891.07, a figure which, contrary to the appellant's contentions, certainly finds support in the trial evidence. Accordingly, the district court's damage award cannot be deemed clearly erroneous.

C.

*Conclusion.*

This court has carefully reviewed the record and, based on that review, this court has found no error in the proceedings be-

low. Accordingly, the district court's ruling will be *AFFIRMED*.